## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re:<br><br>THOMAS HEALTH SYSTEM, INC., et al.<br><br>Debtors[1] | Chapter 11<br><br>Case No. 20-20007 (FWV)<br><br>(Jointly Administered) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THOMAS HEALTH SYSTEM, INC. et al.,<br><br>Plaintiff,<br><br>v.<br><br>UMB BANK, NATIONAL ASSOCIATION, as Master Trustee under that certain Master Trust Agreement, dated June 1, 2008, and CAMDEN P. SIEGRIST and EDWARD McDEVITT, as trustees under those certain Deeds of Trust, dated June 1, 2008,<br><br>Defendant. | Adv. Pro. No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND RELATED RELIEF

Plaintiff, the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its attorneys, on behalf of and as representative of the Debtors' estates, and based on knowledge, information, belief and the results of its investigation to date, alleges as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Thomas Health System, Inc. (0674); Herbert J. Thomas Memorial Hospital Association (4900); Charleston Hospital, Inc. (2692); THS Physician Partners, Inc. (5947); and TMH Services, Inc. (6607).

## NATURE OF ACTION

1.      This adversary proceeding seeks (i) a declaratory judgment that the Obligated

Debtors' Unencumbered Property (defined below) is not subject to the liens or security interests

of UMB Bank, National Association ("UMB" or "Master Trustee"), as successor trustee under

the Master Trust Indenture (defined below) and can be distributed to unsecured creditors in these

chapter 11 cases (the "Chapter 11 Cases") consistent with the priorities set forth in the

Bankruptcy Code; (ii) a declaratory judgment that, to the extent UMB was granted a security

interest in the Unencumbered Deposit Accounts (defined below), such interests are unperfected

and the Unencumbered Deposit Accounts (and the funds therein) can be distributed to unsecured

creditors in the Chapter 11 Cases; (iii) an order avoiding any unperfected security interests in the

Unencumbered Deposit Accounts pursuant to section 544 of the Bankruptcy Code and

recovering and/or preserving the value thereof under sections 550 and 551 of the Bankruptcy

Code; (iv) a determination pursuant to section 506(a) of the Bankruptcy Code that UMB's

claim(s) in the Chapter 11 Cases is/are secured only to the extent of the value of the UMB

Collateral (defined below) in which UMB holds properly perfected liens and enforceable security

interests; and (v) the objection to, and disallowance of, UMB's claims asserted in the Chapter 11

Cases pursuant to section 502(d) of the Bankruptcy Code until the Court enters judgment on this

Complaint by final order.

## JURISDICTION AND VENUE

2.      This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

7223130

3.      This adversary proceeding arises in and relates to the Chapter 11 Cases now

pending in the United States Bankruptcy Court for the Southern District of West Virginia (the

"Court").

4.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(A), (B), (K), and (O).

5.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157 and 1334.

6.      To the extent that this matter is not a core proceeding, this Court has jurisdiction

over this adversary proceeding because it is related to the Chapter 11 Case.

7.      To the extent applicable, Plaintiff consents to the entry of final orders and

judgments by this Court pursuant to 28 U.S.C. 157(c)(2).

8.      Venue of this adversary proceeding in this Court is proper pursuant to 28 U.S.C. §

1409.

9.      The Committee has standing to pursue this Complaint pursuant to the Final Cash

Collateral Order (defined below).

## PARTIES

10.      Plaintiff, the Committee, is an official committee of unsecured creditors appointed

in the Debtors' Chapter 11 Cases by the United States Trustee for the Southern District of West

Virginia on January 29, 2020 under section 1102 of the Bankruptcy Code [Docket No. 129].  The

Committee brings this action on behalf of the Debtors' estates.

11.      Defendant, UMB, is the successor Master Trustee under that certain Master Trust

Indenture, dated as of June 1, 2008 (as supplemented and amended, the "Master Trust

Indenture") among Herbert J. Thomas Memorial Hospital Association ("Thomas Memorial"),

7223130

Charleston Hospital, Inc. d/b/a Saint Francis Hospital ("Saint Francis"), the Thomas Memorial

Hospital Foundation (the "Foundation") and Thomas Health Systems, Inc. ("THS") (collectively,

the "Obligated Group"), and United Bank, Inc. as original master trustee.  Thomas Memorial,

Saint Francis, and THS are referred to collectively herein as the "Obligated Debtors."

12.     Defendants Camden P. Siegrist and Edward McDevitt are the trustees under the

Deeds of Trust (defined below) (in such capacity, the "Deeds of Trust Trustees") and are parties

hereto solely in their capacity as the Deeds of Trust Trustees.

## PROCEDURAL BACKGROUND

13.     On January 10, 2020 (the "Petition Date"), Debtors THS, Thomas Memorial,

Saint Francis and THS Physician Partners, Inc. ("THS Physician Partners"), each filed a

voluntary petition for relief under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") as pending in this Court.

14.     On May 22, 2020, TMH Services, Inc. ("TMH Services") filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.

15.     The Debtors continue to operate their business as debtors-in-possession pursuant

to 11 U.S.C. §§ 1107(a) and 1108.

16.     On January 13, 2020, the Debtors filed the *Debtors' Emergency Motion for Entry*

*of Interim and Final Orders Authorizing the Debtors to Use Cash Collateral, Granting Adequate*

*Protection and Scheduling a Final Hearing Thereon* [Docket No. 37] (the "Cash Collateral

Motion").

17.     In the Cash Collateral Motion, the Debtors describe and define UMB's "Pre-

Petition Collateral" as follows:

> Pursuant to the Master Trust Indenture, the Bond Trust Indenture, the Credit Line
> Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture
> Filing executed and delivered by Thomas Memorial, and the Credit Line Deed of

7223130

Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing executed and delivered by both Thomas Memorial and Saint Francis (each a "Grantor"), the Master Trustee was granted a security interest in, among other things, all of the Grantor's right, title and interest in:

(i) certain real property listed therein (the "Real Property");

(ii) all buildings improvements and fixtures of every kind, and all machinery, equipment and property which are or shall be attached to, or be deemed to be fixtures and a part of such Real Property;

(iii) all equipment, materials, supplies and other property of every kind or nature whatsoever, now or hereafter owned by Grantor or in which it has or shall have an interest, procured for incorporation in or to be affixed to buildings or other improvements on the subject Real Property or appurtenant thereto;

(iv) all furniture, furnishings, equipment and other items of tangible personal property now owned or in which Grantor has an interest or hereafter acquired by Grantor which are used or useful in the buildings or other improvements on such Real Property; and

(v) all rentals, income, issues and profits that may accrue from the aforesaid land and improvements or any part thereof (the "DOT Collateral").

The Master Indenture also provides for security interest in favor of the Master Trustee in "all receipts, revenues, income and other monies received by or on behalf of" any member of the Obligated Group, and all rights to receive the same and all proceeds of such rights (the "Receipts", and collectively with the DOT Collateral, the "Pre-Petition Collateral").

Cash Collateral Motion, ¶ 21-22.

18.    The Cash Collateral Motion states that "[t]he 'Obligated Group' is comprised of THS, Thomas Memorial, Saint Francis and the Foundation." Cash Collateral Motion, ¶ 18. For the avoidance of doubt, the Obligated Group does not include THS Physician Partners or TMH Services (the "Non-Obligated Debtors").

19.    On March 30, 202, the Court entered the *Final Order (A) Authorizing the Use of Cash and Other Collateral, (B) Granting Adequate Protection, and (C) Granting Related Relief* [Docket  No. 475] (the "Final Cash Collateral Order").

7223130

20.     In the Final Cash Collateral Order, the Debtors agreed to a series of stipulations

and releases (the "Stipulations") to facilitate the post-petition use of cash collateral.  The

Stipulations provide, in relevant part:

> The Debtors stipulate and agree that, as of the Petition Date, Debtors
> Thomas Health System, Inc., Herbert J. Thomas Memorial Hospital
> Association and Charleston Hospital, Inc., and non-debtor the Foundation
> for Thomas Memorial and Saint Francis Hospitals, Inc. (collectively, the
> "Obligated Group") are obligated with respect to the Bonds.
>
> The Debtors stipulate and agree that as of the Petition Date, the
> obligations on the Bonds include (i) unpaid principal in the amount of
> $137,910,000, (ii) accrued but unpaid interest in the amount of
> $7,005,728.75, and (iii) accrued and unpaid fees and expenses of the Bond
> Trustee, less the amount of any funds held by the indenture trustee for the
> Bonds as of the Petition Date (the "Bonds Claim").
>
> The Debtors stipulate and agree that as of the Petition Date, the Bonds
> Claim is secured by valid, perfected, binding and enforceable liens and
> security interests in substantially all of the assets of the Obligated Group
> including, inter alia, substantially all of the real and personal property of
> the Obligated Group, revenues of the Obligated Group, and all proceeds
> thereof (the "Pre-Petition Collateral")[.]

Final Cash Collateral Order, ¶ G.

> Subject to the rights of the Committee under Paragraph 5 of this Final
> Order, which are reserved and fully unaffected by this Paragraph 4, the
> entry of this Final Order confirms and constitutes, effective forty-five (45)
> days after entry of this Order: . . . the release by the Debtors and their
> estates of any and all right to object to or contest the liquidated amount of
> the Bonds Claim or the Bond Trustee's security interests in the Pre-
> Petition Collateral and agreement that all such claims and security
> interests have been duly perfected and are in all respects valid and
> enforceable first priority security interests and liens, subject and
> subordinate only to the Carve-Out.

Final Cash Collateral Order, ¶ 4.

21.     The definition of "Pre-Petition Collateral" in paragraph G of the Final Cash

Collateral Order is thus broader than the definition contained in the Cash Collateral Motion—the

Cash Collateral Motion does not state that UMB has "liens and security interests in substantially

7223130

all of the assets of the Obligated Group," as stated in paragraph G of the Final Cash Collateral

Order.

22.    The Final Cash Collateral Order provides that notwithstanding the Stipulations,

the Committee is granted standing to initiate and prosecute "an adversary proceeding or

contested matter challenging the amount, validity, extent, enforceability, perfection, or priority of

the Bonds Claim or the Bond Trustee's liens in respect thereof (a "Bonds Claim Challenge")" by

June 28, 2020 (the "Bonds Claim Challenge Period").  Final Cash Collateral Order, ¶ 5.

23.    The Final Cash Collateral order also provides that the Committee is granted

standing to initiate and prosecute an adversary proceeding or contested matter against UMB

asserting any claim other than matters subject to the Bonds Claim Challenge Period (an "Other

Claims Challenge") by July 28, 2020.  Final Cash Collateral Order, ¶ 5.

24.    Following entry of the Final Cash Collateral Order, the Committee and its

professionals commenced an investigation in connection with a Bonds Claim Challenge.

25.    Through its investigation, the Committee discovered that, upon information and

belief,[2] contrary to the descriptions in the Stipulations, UMB does not have a perfected lien on or

security interest in the Unencumbered Property of the Obligated Debtors, which unencumbered

property of the Obligated Debtors consists of, but is not limited to, (a) investment property,

including any investment accounts (the "Unencumbered Investment Property"), (b) deposit

accounts, including any funds contained therein (the "Unencumbered Deposit Accounts"), (c)

gifts, grants, bequests, donations and contributions designated or specified by the granting

authority, donor or maker thereof as being for specified purposes (other than payment of debt

service on the Indebtedness (as defined in the Master Trust Indenture)) and the income derived

---

[2] The Committee's investigation to date has been based, in part, on documents produced by UMB and the Debtors
and references to the "upon information and belief" are based on the Committee's review and analysis of the
documents produced by the Debtors and UMB to date.

therefrom (the "Unencumbered Grants"), (d) commercial tort claims and the proceeds thereof

(the "Unencumbered Commercial Tort Claims"), (e) general intangibles (the "Unencumbered

General Intangibles"), (f) all furniture, furnishings, equipment and other items of tangible

personal property not used or useful in connection with real property on which UMB has a lien

(the "Unencumbered Personal Property"); and (g) all real property not described in the Deeds of

Trust (the "Unencumbered Real Property").

26.    As such, there are substantial, valuable assets of the Obligated Debtors that are

not included in UMB's collateral or are subject to unperfected security interests of UMB that

may be avoided.

27.    For the avoidance of doubt, the Committee does not challenge the stipulation

contained in paragraph G of the Final Cash Collateral Order stating that only the Obligated

Debtors are obligated with respect to the Bonds and that only assets of the Obligated Debtors

may constitute alleged pre-petition collateral.  As such, none of the property of the Non-

Obligated Debtors—TMH Services and THS Physician Partners—is subject to the liens or

security interests of UMB and all such property of the Non-Obligated Debtors can be distributed

to unsecured creditors in these Chapter 11 Cases consistent with the priorities set forth in the

Bankruptcy Code without the need for a declaratory judgment from this Court with respect

thereto.

28.    The allegations contained herein are based on the Committee's preliminary

investigation of UMB's asserted liens and security interests, which investigation remains

ongoing.  As such, the Committee reserves all rights with respect to the allegations contained

herein, including the right to amend or supplement such allegations as the Committee continues

its investigation.  Further, nothing contained herein shall impact or limit the Committee's rights

7223130

with respect to any Other Claims Challenge, which Other Claims Challenge shall be governed by the terms of the Final Cash Collateral Order.

## FACTUAL ALLEGATIONS

I.    The Master Trust Indenture

29.    On June 1, 2008, the West Virginia Hospital Finance Authority issued $148,920,000 in Hospital Revenue Improvement Bonds (Thomas Health System, Inc.) Series 2008 (the "Bonds").  In connection therewith, also on June 1, 2008, Thomas Memorial, Saint Francis, the Foundation, and United Bank, Inc. ("United Bank") as original master trustee, entered into the Master Trust Indenture and Supplemental Master Trust Indenture 2008-1.  As set forth in the Cash Collateral Motion, the Master Trust Indenture was supplemented and amended by the Supplemental Master Indenture 2009-1, dated February 1, 2009, and a Supplemental Master Trust Indenture 2009-2, dated July 1, 2009, pursuant to which THS became a party to the Master Trust Indenture and a member of the Obligated Group.  Cash Collateral Motion, ¶ 18. The "Obligated Group" is currently comprised of THS, Thomas Memorial, Saint Francis and the Foundation.

30.    Upon information and belief, on or about August 16, 2018, UMB replaced United Bank, Inc. as the Master Trustee.

II.    The Granting Clauses in the Collateral Documents

A.    *The Master Trust Indenture*

31.    Pursuant to the Master Trust Indenture, the Obligated Group granted the Master Trustee a security interest in all "Gross Receipts."  Master Trust Indenture, page 2 (the "Granting Clause").[3]  Gross Receipts is defined in the Master Trust Indenture as follows:

---

[3] The Granting Clause and definition of Gross Receipts are attached hereto as Exhibit A.

[A]ll receipts, revenue, income and other moneys received by or on behalf of any one or more Members of the Obligated Group, including but without limiting the generality of the foregoing, revenues derived from the ownership or operation of Property, including insurance and condemnation proceeds with respect to Property or any portion thereof, and all rights to receive the same, whether in the form of accounts, accounts receivable, contract rights or other rights, and the proceeds of such rights, and whether now owned or held or hereafter coming into existence; provided, however, that gifts, grants, bequests, donations and contributions heretofore or hereafter made and designated or specified by the granting authority, donor or maker thereof as being for specified purposes (other than payment of debt service on the Indebtedness) and the income derived therefrom to the extent required by such designation or specification shall be excluded from Gross Receipts.

Master Trust Indenture, § 1.1.

32.     "Property" as used in the definition of Gross Receipts is defined as "any and all

rights, titles and interests in and to any and all property, whether real or personal, tangible

(including cash) or intangible, wherever situated and whether now owned or hereafter

acquired[.]"  Master Trust Indenture, § 1.1.

33.     "Accounts" as used in the definition of Gross Receipts is defined as follows:

"Account Receivable" or "Account" has the meaning given it in the West Virginia Uniform Commercial Code . . . . **The term does not include:** (i) Rights to payment evidenced by chattel paper of an instrument**; (ii) commercial tort claims; (iii) deposit accounts; (iv) investment property;** (v) letter-of-credit rights or letters of credit; or (vi) rights to payment for money or funds advanced or sold, other than rights arising out of the use of a credit or charge card or information contained on or for use with the card.

 Master Trust Indenture, § 1.1 (emphasis added).  This is consistent with the definition of

"Account" in the West Virginia Uniform Commercial Code, which also excludes commercial

tort claims, deposit accounts and investment property.  *See* W. Va. Code § 46-9-102(a)(2).

34.     The definition of Gross Receipts does not include the following assets of the

Obligated Debtors: investment property, deposit accounts, commercial tort claims, and general

intangibles, which assets are thus not included in the Granting Clause.  In fact, the definition of

"account" as referenced in the definition of Gross Receipts (and as consistent with the West

Virginia Uniform Commercial Code) excludes commercial tort claims, deposit accounts and investment property.

35.     Further, the definition of Gross Receipts specifically excludes the following assets of the Obligated Debtors from the Granting Clause:  "gifts, grants, bequests, donations and contributions heretofore or hereafter made and designated or specified by the granting authority, donor or maker thereof as being for specified purposes (other than payment of debt service on the Indebtedness) and the income derived therefrom to the extent required by such designation or specification[.]"  Master Trust Indenture, § 1.1."

36.     The Granting Clause also allows for commingling of collateral with other assets of the Debtors as follows:

> [T]he existence of such security interest shall not prevent the expenditure, deposit or commingling of Gross Receipts and other collateral pledged by the Obligated Group so long as all required payments in connection with such Notes and other Obligations are made when due . . . If any payment required in connection with the Obligations is not made when due, any Gross Receipts subject to this security interest which are then on hand and any such Gross Receipts thereafter shall not be commingled or deposited, but shall immediately, or upon receipt, be transferred to the Master Trustee for deposit in the Gross Receipts Account[.]

Master Trust Indenture, page 2.

B.     *The Saint Francis Deed of Trust*

37.     On June 1, 2008, Saint Francis entered into that certain Credit Line Deed of Trust and Fixture Filing and Security Agreement (the "Saint Francis Deed of Trust"),[4] pursuant to which Saint Francis granted UMB liens on and security interests in the following:

(a)     All of Grantor's estate, and any and all of Grantor's other right, title and interest covering those certain tracts or parcels of land located in the City of Charleston, Kanawha County, West Virginia, which property is more particularly described on Schedule 1 attached [thereto].

---

[4] The granting clause contained in the Saint Francis Deed of Trust is attached hereto as Exhibit B.

7223130

(b) All right, title and interest of Grantor now owned or hereafter acquired in and to any and all sidewalks, alleys, streets, and all strips and gores of land adjacent to or used in connection with such real property and all easements and rights of way in connection therewith.

[(a) and (b) above the "Saint Francis Encumbered Real Property"]

(c) All right, title and interest of Grantor in and to all buildings, improvements and fixtures of every kind, and all machinery, equipment and property which are or shall be attached to, or deemed to be fixtures and a part of, the real property [therein] conveyed.

(d) All right, title and interest of Grantor in and to all equipment, materials, supplies and other property of every kind or nature whatsoever, now or hereafter owned by Grantor or in which it has or shall have an interest, procured for incorporation in or to be affixed to buildings or other improvements on the above described real property or appurtenant thereto.

(e) All right, title and interest of Grantor in and to all furniture, furnishings, equipment and other items of tangible personal property now owned or in which Grantor has an interest or hereafter acquired by Grantor which are used or useful in the buildings or other improvements on such real property.

(f) All rentals, income, issues and profits that may accrue from the aforesaid land and improvements or any part thereof; provided, however, that so long as Grantor shall not be in default hereunder Grantor shall be entitled to collect and receive all said rents, income, issues and profits.

[(c) through (f) above, the "Saint Francis Encumbered Real Property Related Assets," and together with the Saint Francis Encumbered Real Property, the "Saint Francis Encumbered Real Property and Related Assets"] Saint Francis Deed of Trust, pages 1-3.

38.     Thus, the collateral described in the Saint Francis Deed of Trust does not include (i) any property other than the Saint Francis Encumbered Real Property or (ii) any furniture, furnishings, equipment and other items of tangible personal property which are not used or useful in connection with the Saint Francis Encumbered Real Property.

C.      *The Thomas Memorial Deed of Trust*

39.     On June 1, 2008, Thomas Memorial entered into that certain Credit Line Deed of Trust, Leasehold Deed of Trust, Fixture Filing and Security Agreement (the "Thomas Memorial

12

Deed of Trust,"[5] and together with the Saint Francis Deed of Trust, the "Deeds of Trust"),

pursuant to which Thomas Memorial granted UMB liens on and security interests in the

following:

(a) All of Grantor's estate, and any and all of Grantor's other right, title and interest covering those certain tracts or parcels of land located in the City of South Charleston, Kanawha County, West Virginia, which property is more particularly described on Schedule 1 attached [thereto];

(b) All of Grantor's leasehold estate, and any and all of Grantor's other right, title and interest, under and pursuant to that certain Amended and Restated Lease dated as of March 1, 1993, as supplemented and amended (together with any and all extension and renewals thereof and amendments thereto, the "Lease"), between the City of South Charleston, West Virginia, as lessor (the "Lessor"), and Grantor, as lessee, covering those certain tracts of parcels of land located in the City of South Charleston, Kanawha County, West Virginia, which property is more particularly described on Schedule 2 attached [thereto], and which Lease is of record in the office of the Clerk of the County Commission of Kanawha County in Book 240 at page 320.

(c) All right, title and interest of Grantor now owned or hereafter acquired in and to any and all sidewalks, alleys, streets, and all strips and gores of land adjacent to or used in connection with such real property and all easements and rights of way in connection therewith.

[(a) through (c) above the "Thomas Memorial Encumbered Real Property"]

(d) All right, title and interest of Grantor in and to all buildings, improvements and fixtures of every kind, and all machinery, equipment and property which are or shall be attached to, or deemed to be fixtures and a part of, the real property herein conveyed.

(e) All right, title and interest of Grantor in and to all equipment, materials, supplies and other property of every kind or nature whatsoever, now or hereafter owned by Grantor or in which it has or shall have an interest, procured for incorporation in or to be affixed to buildings or other improvements on the above described real property or appurtenant thereto.

(f) All right, title and interest of Grantor in and to all furniture, furnishings, equipment and other items of tangible personal property now owned or in which Grantor has an interest pursuant to the Lease or hereafter acquired by Grantor which are used or useful in the buildings or other improvements on such real property.

---

[5] The granting clause contained in the Thomas Memorial Deed of Trust is attached hereto as Exhibit C.

7223130

(g) All rentals, income, issues and profits that may accrue from the aforesaid land and improvements or any part thereof; provided, however, that so long as Grantor shall not be in default hereunder Grantor shall be entitled to collect and receive all said rents, income, issues and profits. All property and interests in property described above, together with the real estate described above, shall secure the indebtedness herein described and covered by this Deed of trust, and all the foregoing property, interests in property and other rights and interests are herein sometimes referred to collectively as the "Property."

[(d) through (g) above, the "Thomas Memorial Encumbered Real Property Related Assets," and together with the Thomas Memorial Encumbered Real Property, the "Thomas Memorial Encumbered Real Property and Related Assets"] Thomas Memorial Deed of Trust, pages 1-2.

40.    Thus, the collateral described in the Thomas Memorial Deed of Trust does not include (i) any property other than the Thomas Memorial Encumbered Real Property or (ii) any furniture, furnishings, equipment and other items of tangible personal property which are not used or useful in connection with the Thomas Memorial Encumbered Real Property.

III.    Filing of UCC-1 Financing Statements and Recording of Deeds of Trust

41.    Upon information and belief, on June 30, 2008, United Bank, as original master trustee under the Master Trust Indenture, filed a UCC-1 financing statement identifying Charleston Hospital, Inc. as the debtor, and describing the master trustee's collateral as the Gross Receipts and the Saint Francis Encumbered Real Property Related Assets. Upon information and belief, on each of March 27, 2013, and June 11, 2018, United Bank filed a continuation statement in connection therewith.

42.    Upon information and belief, on September 27, 2018, UMB filed an assignment of the UCC-1 financing statement against Saint Francis, changing the secured party from United Bank to UMB.

14

7223130

43.     Upon information and belief, on June 30, 2008, United Bank, as original master trustee under the Master Trust Indenture, filed a UCC-1 financing statement identifying Herbert J. Thomas Memorial Hospital Association as the debtor, and describing the master trustee's collateral as the Gross Receipts and the Thomas Memorial Encumbered Real Property Related Assets.  Upon information and belief, on each of March 27, 2013, and June 11, 2018, United Bank filed a continuation statement in connection therewith.

44.     Upon information and belief, on September 27, 2018, UMB filed an assignment of the UCC-1 financing statement against Thomas Memorial, changing the secured party from United Bank to UMB.

45.     Upon information and belief, on August 31, 2018, United Bank, as original master trustee under the Master Trust Indenture, filed a UCC-1 financing statement identifying Thomas Health System, Inc. as the debtor, and describing the master trustee's collateral as the Gross Receipts.

46.     Upon information and belief, on September 27, 2018, UMB filed an assignment of the UCC-1 financing statement against THS, changing the secured party from United Bank to UMB.

47.     Upon information and belief, the Deeds of Trust were recorded on June 30, 2008 with the County Clerk in Kanawha County, West Virginia.

IV.   The Unencumbered Property

48.     All of the Obligated Debtors' property that is not (i) the Gross Receipts, (ii) the Saint Francis Encumbered Real Property and Related Assets, and (iii) the Thomas Memorial Encumbered Real Property and Related Assets (the "UMB Collateral") is not subject to UMB's liens or security interests (the "Unencumbered Property").

15

49.     Upon information and belief, the Unencumbered Property includes, without limitation:  (a) the Unencumbered Investment Property, (b) the Unencumbered Deposit Accounts, (c) the Unencumbered Grants, (d) the Unencumbered Commercial Tort Claims, (e) the Unencumbered General Intangibles, (f) the Unencumbered Personal Property; and (g) the Unencumbered Real Property.

50.     To the extent the definition of "Gross Receipts" includes the Unencumbered Deposit Accounts—which is directly contrary to the definition of "accounts" in the Master Trust Indenture and West Virginia Uniform Commercial Code—upon information and belief, UMB has not perfected such liens on or security interest in the Unencumbered Deposit Accounts because UMB does not have control over such accounts as required for perfection under W. Va. Code §§ 46-9-104, 9-314.

51.     As set forth above, for the avoidance of doubt and without the need for a declaratory judgment related thereto, none of the Non-Obligated Debtors' property is subject to UMB's liens or security interests.

## CLAIMS FOR RELIEF

### COUNT I

**DECLARATORY JUDGMENT THAT UNENCUMBERED
INVESTMENT PROPERTY IS NOT SUBJECT TO UMB'S LIENS
OR SECURITY INTERESTS**

**(28 U.S.C. §§ 2201 and 2202)**

52.     The Committee repeats and realleges each of the preceding paragraphs as if fully set forth herein.

16

7223130

53.     The grant of liens on and security interests in the Gross Receipts does not include a grant of liens on or security interests in the Unencumbered Investment Property, as the definition of Gross Receipts contains no mention of investment property.

54.     The West Virginia Uniform Commercial Code provides that to grant a security interest in investment property, the description of the collateral must be specific.  "[A] description of a security entitlement, securities account or commodity account is sufficient if it describes: (1) The collateral by those terms or as investment property; or (2) The underlying financial asset or commodity contract."  W. Va. Code § 46-9-108.

55.     The definition of Gross Receipts in the Master Trust Indenture does not specifically include a description of any investment property.  Rather, the definition of "accounts," as referenced in the definition of Gross Receipts, specifically excludes investment property.

56.     As such, under the Master Trust Indenture, the Obligated Debtors did not grant UMB any liens on or security interests in the Unencumbered Investment Property and no lien, claim or encumbrance of UMB attached to any Unencumbered Investment Property.

57.     Accordingly, the Committee is entitled to a judgment declaring that UMB does not have a lien on or security interest in any Unencumbered Investment Property and no lien, claim or encumbrance of UMB attached to any Unencumbered Investment Property.

## COUNT II

### DECLARATORY JUDGMENT THAT UNENCUMBERED DEPOSIT ACCOUNTS ARE NOT SUBJECT TO UMB'S LIENS AND SECURITY INTERESTS

### (28 U.S.C. §§ 2201 and 2202)

58.     Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

7223130

59.     The grant of liens on and security interests in Gross Receipts does not include a grant of liens on or security interests in the Unencumbered Deposit Accounts, as the definition of Gross Receipts contains no mention of deposit accounts.  Rather, the definition of "accounts," as referenced in the definition of Gross Receipts, specifically excludes deposit accounts.

60.     As such, under the Master Trust Indenture, the Obligated Debtors did not grant UMB any liens on or security interests in the Unencumbered Deposit Accounts and no lien, claim or encumbrance of UMB attached to any Unencumbered Deposit Accounts.

61.     Accordingly, the Committee is entitled to a judgment declaring that UMB does not have a lien on or security interest in any Unencumbered Deposit Accounts and no lien, claim or encumbrance of UMB attached to any Unencumbered Deposit Accounts.

## COUNT III

### DECLARATORY JUDGMENT THAT UNENCUMBERED GRANTS ARE NOT SUBJECT TO UMB'S LIENS AND SECURITY INTERESTS

### (28 U.S.C. §§ 2201 and 2202)

62.     Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

63.     The grant of liens on and security interests in Gross Receipts does not include a grant of liens on and security interests in the Unencumbered Grants.  Rather, the definition of Gross Receipts specifically excludes the following:  "gifts, grants, bequests, donations and contributions heretofore or hereafter made and designated or specified by the granting authority, donor or maker thereof as being for specified purposes (other than payment of debt service on the Indebtedness) and the income derived therefrom to the extent required by such designation or specification[.]"  Master Trust Indenture, section 1.1.

18

7223130

64.     As such, under the Master Trust Indenture, the Obligated Debtors did not grant UMB any liens on or security interests in the Unencumbered Grants and no lien, claim or encumbrance of UMB attached to any Unencumbered Grants.

65.     Accordingly, the Committee is entitled to a judgment declaring that UMB does not have a lien on or security interest in any Unencumbered Grants and no lien, claim or encumbrance of UMB attached to any Unencumbered Grants.

## COUNT IV

### DECLARATORY JUDGMENT THAT UNENCUMBERED COMMERCIAL TORT CLAIMS ARE NOT SUBJECT TO UMB'S LIENS AND SECURITY INTERESTS

### (28 U.S.C. §§ 2201 and 2202)

66.     Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

67.     The grant of liens on and security interests in Gross Receipts does not include a grant of liens on and security interests in the Unencumbered Commercial Tort Claims, as the definition of Gross Receipts contains no mention of commercial tort claims.  Rather, the definition of "accounts," as referenced in the definition of Gross Receipts, specifically excludes commercial tort claims.

68.     Further, even if the definition of Gross Receipts included a reference to commercial tort claims—which it does not—such general description only be type of collateral would be insufficient to grant a lien on or security interest in such commercial tort claims under the West Virginia Uniform Commercial Code.  W. Va. Code § 46-9-108 ("description only by type of collateral defined in the Uniform Commercial Code is an insufficient description of: (1) A commercial tort claim.

7223130

69.     As such, under the Master Trust Indenture, the Obligated Debtors did not grant UMB any liens on or security interests in the Unencumbered Commercial Tort Claims and no lien, claim or encumbrance of UMB attached to any Unencumbered Commercial Tort Claims.

70.     Accordingly, the Committee is entitled to a judgment declaring that UMB does not have a lien on or security interest in any Unencumbered Grants and no lien, claim or encumbrance of UMB attached to any Unencumbered Commercial Tort Claims.

<u>COUNT V</u>

**DECLARATORY JUDGMENT THAT UNENCUMBERED GENERAL INTANGIBLES ARE NOT SUBJECT TO UMB'S LIENS AND SECURITY INTERESTS**

**(28 U.S.C. §§ 2201 and 2202)**

71.     Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

72.     The grant of liens on and security interests in Gross Receipts does not include a grant of liens on and security interests in the Unencumbered General Intangibles, as the definition of Gross Receipts contains no mention of general intangibles.

73.     As such, under the Master Trust Indenture, the Obligated Debtors did not grant UMB any liens on or security interests in the Unencumbered General Intangibles and no lien, claim or encumbrance of UMB attached to any Unencumbered General Intangibles.

74.     Accordingly, the Committee is entitled to a judgment declaring that UMB does not have a lien on or security interest in any Unencumbered General Intangibles and no lien, claim or encumbrance of UMB attached to any Unencumbered General Intangibles.

7223130

## COUNT VI

### DECLARATORY JUDGMENT THAT UNENCUMBERED PERSONAL PROPERTY IS NOT SUBJECT TO UMB'S LIENS AND SECURITY INTERESTS

### (28 U.S.C. §§ 2201 and 2202)

75.     Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

76.     The grant of liens on and security interests in the Saint Francis Encumbered Real Property Related Assets and the Thomas Memorial Encumbered Real Property Related Assets does not include a grant of liens on or security interests in the Unencumbered Personal Property.

77.     The Deeds of Trust only include the grant of an interest to UMB in "furniture, furnishings, equipment and other items of tangible personal property . . . which are used or useful <u>in the buildings or other improvements on such real property</u>."  Saint Francis Deed of Trust, page 2 (emphasis added); *see also* Thomas Memorial Deed of Trust, page 2.  All other such "furniture, furnishings, equipment and other items of tangible personal property" which are <u>not</u> used or useful in the buildings or other improvements on the real property on which UMB has a lien are thus excluded from the UMB Collateral.

78.     As such, under the Deeds of Trust, the Obligated Debtors did not grant UMB any liens on or security interests in the Unencumbered Personal Property and no lien, claim or encumbrance of UMB attached to any Unencumbered Personal Property.

79.     Accordingly, the Committee is entitled to a judgment declaring that UMB does not have a lien on or security interest in any Unencumbered Personal Property and no lien, claim or encumbrance of UMB attached to any Unencumbered Personal Property.

7223130

## COUNT VII

### DECLARATORY JUDGMENT THAT UNENCUMBERED REAL PROPERTY IS NOT SUBJECT TO UMB'S LIENS AND SECURITY INTERESTS

### (28 U.S.C. §§ 2201 and 2202)

80.     Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

81.     The grant of liens on and security interests in the Saint Francis Encumbered Real Property and the Thomas Memorial Encumbered Real Property does not include a grant of security interests in the Unencumbered Real Property.

82.     Specifically, the Saint Francis Encumbered Real Property is limited to only:  (A) "All of Grantor's estate, and any and all of Grantor's other right, title and interest covering those certain tracts or parcels of land located in the City of Charleston, Kanawha County, West Virginia, which property is more particularly described on Schedule 1 attached [thereto]"; and (B) "All right, title and interest of Grantor now owned or hereafter acquired in and to any and all sidewalks, alleys, streets, and all strips and gores of land adjacent to or used in connection with such real property and all easements and rights of way in connection therewith."  Any real property that falls outside this description is not covered by the Saint Francis Deed of Trust and remains unencumbered.

83.     Similarly, the Thomas Memorial Encumbered Real Property is limited to only: (A) "All of Grantor's estate, and any and all of Grantor's other right, title and interest covering those certain tracts or parcels of land located in the City of South Charleston, Kanawha County, West Virginia, which property is more particularly described on Schedule 1 attached [thereto]"; (B) "All of Grantor's leasehold estate, and any and all of Grantor's other right, title and interest, under and pursuant to that certain Amended and Restated Lease dated as of March 1, 1993, as

22

supplemented and amended (together with any and all extension and renewals thereof and amendments thereto, the "Lease"), between the City of South Charleston, West Virginia, as lessor (the "Lessor"), and Grantor, as lessee, covering those certain tracts of parcels of land located in the City of South Charleston, Kanawha County, West Virginia, which property is more particularly described on Schedule 2 attached [thereto], and which Lease is of record in the office of the Clerk of the County Commission of Kanawha County in Book 240 at page 320"; and (C) "All right, title and interest of Grantor now owned or hereafter acquired in and to any and all sidewalks, alleys, streets, and all strips and gores of land adjacent to or used in connection with such real property and all easements and rights of way in connection therewith."  Any real property that falls outside this description is not covered by the Thomas Memorial Deed of Trust and remains unencumbered.

84.     As such, under the Deeds of Trust, the Obligated Debtors did not grant UMB any liens on or security interests in the Unencumbered Real Property and no lien, claim or encumbrance of UMB attached to any Unencumbered Real Property.

85.     Accordingly, the Committee is entitled to a judgment declaring that UMB does not have a lien on or security interest in any Unencumbered Real Property and no lien, claim or encumbrance of UMB attached to any Unencumbered Real Property.

## COUNT VIII

### AVOIDANCE OF UNPERFECTED SECURITY INTERESTS

### (11 U.S.C. §§ 544, 550 and 551)

86.     The Committee repeats and realleges each of the proceeding paragraphs as if fully set forth herein.

7223130

87.     To the extent UMB was granted a security interest in the Unencumbered Deposit Accounts, UMB failed to property perfect its purported security interests in such Unencumbered Deposit Accounts pursuant to the perfection process for deposit accounts under the West Virginia Uniform Commercial Code.  *See* W. Va. Code §§ 46-9-104, 9-314.

88.     W. Va. Code § 9-314 provides that a security interest in deposit accounts may be perfected by control of the collateral under W. Va. Code § 9-104, which provides that a secured party has control of a deposit account if:

(1)  the secured party is the bank with which the deposit account is maintained;

(2)  the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor; or;

(3)  the secured party becomes the bank's customer with respect to the deposit account.

W. Va. Code § 46-9-104(a).

89.     Upon information and belief, UMB is not the bank where the Unencumbered Deposit Accounts are maintained nor is UMB the bank's customer with respect to the Unencumbered Deposit Accounts.

90.     Upon information and belief, UMB does not have any deposit accounts control agreements with respect to the Unencumbered Deposit Accounts.

91.     As such, any liens or security interests of UMB in the Unencumbered Deposit Accounts are unperfected and the Unencumbered Deposit Accounts (and the funds therein) are available for distribution to unsecured creditors in the Chapter 11 Cases consistent with the priorities set forth in the Bankruptcy Code.

92.     Section 544(a) of the Bankruptcy Code, among other things, grants the Debtors the rights and powers of: (i) "a creditor that extends credit to the debtor at the time of the

24

commencement of the case, and that obtains, at such time and with respect to such credit, a

judicial lien on all property on which a creditor on a simple contract could have obtained such a

judicial lien, whether or not such a creditor exists[;]" (ii) "a creditor that extends credit to the

debtor at the time of the commencement of the case, and obtains at such time and with respect to

such credit, an execution against the debtor that is returned unsatisfied at such time, whether or

not such a creditor exists[;]" and (iii) a bona fide purchaser of real property, other than fixtures,

from the debtor, against whom applicable law permits such transfer to be perfected, that obtains

the status of a bona fide purchaser and has perfected such transfer at the time of the

commencement of the case, whether or not such a purchase exists."  11 U.S.C. § 544(a).

93.     Pursuant to 11 U.S.C. § 544(a), the interest of the Debtors' estates in the

Unencumbered Deposit Accounts is superior and/or senior to any unperfected interests of UMB

in the Unencumbered Deposit Accounts and any and all security interests in the Unencumbered

Deposit Accounts should be avoided pursuant to section 544(a) of the Bankruptcy Code.

94.     Further, such Unencumbered Deposit Accounts or the value of such

Unencumbered Deposit Accounts should be recovered by the Debtors' estates pursuant to section

550(a) of the Bankruptcy Code and/or automatically preserved for the benefit of the Debtors'

estates pursuant to section 551 of the Bankruptcy Code.

95.     Accordingly, the Committee is entitled to a judgment avoiding UMB's

unperfected liens and security interests in the Unencumbered Deposit Accounts (to the extent

UMB received a grant of a lien or security interest in the Unencumbered Deposit Accounts under

the Granting Clause of the Master Trust Indenture, which the Committee disputes) and the

Unencumbered Deposit Accounts (and the funds therein) are available for distribution to

7223130

unsecured creditors in the Chapter 11 Cases consistent with the priorities set forth in the

Bankruptcy Code.

## COUNT IX

## DETERMINATION OF SECURED CLAIM

## (11 U.S.C. § 506)

96.     The Committee repeats and realleges each of the proceeding paragraphs as if fully

set forth herein.

97.     Pursuant to 11 U.S.C. § 506(a), (i) UMB's claim is an allowed secured claim only

to the extent of the value of the UMB Collateral in which UMB holds perfected liens and

security interests and (ii) UMB's claim is an allowed unsecured claim to the extent that the value

of the UMB Collateral is less than the amount of UMB's asserted claim.

98.     Accordingly, the Committee is entitled to a judgment fixing the allowed amount

of UMB's secured claim at the value of the UMB Collateral and classifying the remaining

portion of UMB's claim as a general unsecured claim.

## COUNT X

## OBJECTION TO, AND DISALLOWANCE OF, CLAIMS

## (11 U.S.C. §502)

99.     The Committee repeats and realleges each of the proceeding paragraphs as if fully

set forth herein.

100.    Section 502(d) of the Bankruptcy Code provides that "the court shall disallow any

claim of any entity from which property is recoverable under section . . . 550."  11 U.S.C.

§502(d).

26

101.    Under section 550 of the Bankruptcy Code, the Committee seeks to recover the avoided transfer of any liens on or security interests in the Unencumbered Deposit Accounts or the value of such Unencumbered Deposit Accounts (to the extent UMB received a grant of a lien or security interest in the Unencumbered Deposit Accounts under the Granting Clause of the Master Trust Indenture, which the Committee disputes).

102.    Under section 502(d) of the Bankruptcy Code, UMB's claims are disallowed until such time as the Court enters judgment on the Complaint by final order.

## PRAYER FOR RELIEF

**WHEREFORE**, the Committee seeks entry of orders and judgments against UMB granting the following relief:

(1)    Declaring that the Unencumbered Investment Property is not subject to any liens on or security interests of UMB and that such property does not constitute UMB Collateral and the Unencumbered Investment Property is available for distribution to unsecured creditors in the Chapter 11 Cases consistent with the priorities set forth in the Bankruptcy Code;

(2)    Declaring that the Unencumbered Deposit Accounts are not subject to any liens on or security interests of UMB and that such property does not constitute UMB Collateral and the Unencumbered Deposit Accounts (and the funds therein) are available for distribution to unsecured creditors in the Chapter 11 Cases consistent with the priorities set forth in the Bankruptcy Code;

(3)    Declaring that the Unencumbered Grants are not subject to any liens on or security interests of UMB and that such property does not constitute UMB Collateral and the Unencumbered Grants (and the proceeds thereof) are available for distribution to unsecured creditors in the Chapter 11 Cases consistent with the priorities set forth in the Bankruptcy Code;

7223130

(4)     Declaring that the Unencumbered Commercial Tort Claims are not subject to any liens on or security interests of UMB and that such property does not constitute UMB Collateral and the Unencumbered Commercial Tort Claims (and the proceeds thereof) are available for distribution to unsecured creditors in the Chapter 11 Cases consistent with the priorities set forth in the Bankruptcy Code;

(5)     Declaring that the Unencumbered General Intangibles are not subject to any liens on or security interests of UMB and that such property does not constitute UMB Collateral and the Unencumbered General Intangibles (and the proceeds thereof) are available for distribution to unsecured creditors in the Chapter 11 Cases consistent with the priorities set forth in the Bankruptcy Code;

(6)     Declaring that the Unencumbered Personal Property is not subject to any liens on or security interests of UMB and that such property does not constitute UMB Collateral and the Unencumbered Personal Property (and the proceeds thereof) is available for distribution to unsecured creditors in the Chapter 11 Cases consistent with the priorities set forth in the Bankruptcy Code;

(7)     Declaring that the Unencumbered Real Property is not subject to any liens on or security interests of UMB and that such property does not constitute UMB Collateral and the Unencumbered Real Property is available for distribution to unsecured creditors in the Chapter 11 Cases consistent with the priorities set forth in the Bankruptcy Code;

(8)     Declaring that, to the extent UMB was granted a lien on or security interest in Unencumbered Deposit Accounts, such security interests are unperfected and the Unencumbered Deposit Accounts (or the proceeds thereof) are available for distribution to unsecured creditors in the Chapter 11 Cases consistent with the priorities set forth in the Bankruptcy Code;

28

7223130

(9)    Avoiding any of UMB's unperfected liens on and security interests in the

Unencumbered Deposit Accounts pursuant to section 544 of the Bankruptcy Code, and (i)

transferring to the Debtors' estates the avoided liens on or security interests in the

Unencumbered Deposit Accounts pursuant to section 550(a) of the Bankruptcy Code and/or (ii)

automatically preserving the avoided liens on or security interests in the Unencumbered Deposit

Accounts or the value of such transfers for the benefit of the Debtors' estates pursuant to section

551 of the Bankruptcy Code;

(10)    Determining that UMB's claim is secured only to the extent of the value of the

UMB Collateral and unsecured to the extent the value of the UMB Collateral is less than the

amount of UMB's asserted claim;

(11)    Disallowing UMB's claims pursuant to section 502(d) of the Bankruptcy Code

until the Committee's claims herein have been resolved; and

(12)    Granting the Committee such other and further relief as the Court deems just,

proper and equitable, including the costs and expenses of this action.


Dated: June 11, 2020                    Respectfully Submitted


**BAILEY & WYANT, PLLC**

*/s/  H. F. Salsbery*
H. F. Salsbery (WV Bar No. 3235)
500 Virginia Street East, Suite 600
P.O. Box 3710
Charleston, WV 25337
(304) 345-4222 Tel.
(304) 343-3133 Fax.
tsalsbery@baileywyant.com

*-AND-*

7223130

**SILLS CUMMIS & GROSS P.C.**
Andrew H. Sherman (*pro hac vice*)
Boris I. Mankovetskiy (*pro hac vice*)
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000 Tel.
(973) 643-6500 Fax
asherman@sillscummis.com
bmankovetskiy@sillscummis.com

*Counsel to the Official Committee of Unsecured
Creditors of Thomas Health System, Inc., et al.*

7223130