This **MASTER TRUST INDENTURE** is made and entered into as of June 1, 2008, by and between **HERBERT J. THOMAS MEMORIAL HOSPITAL ASSOCIATION**, a West Virginia nonstock, nonprofit corporation ("Thomas" or the "Corporation"), **CHARLESTON HOSPITAL, INC.**, a West Virginia nonstock, nonprofit corporation ("CHI"), **THOMAS MEMORIAL HOSPITAL FOUNDATION, INC.**, a West Virginia nonstock, nonprofit corporation ("TMHF"), and **UNITED BANK, INC.**, a West Virginia banking corporation duly established, existing and authorized to accept and execute trusts of the character set out herein under and by virtue of the laws of the State of West Virginia, with its corporate trust office in Charleston, West Virginia, as trustee (the "Master Trustee");

## WITNESSETH:

**WHEREAS**, the Corporation desires to provide in this Master Indenture for other legal entities to join with it in the future in pooling credit resources in order to achieve lower borrowing costs and to become jointly and severally liable with the Corporation and such other entities for the payment of the Obligations and the performance of all covenants contained herein (the Corporation and each legal entity incurring such joint and several liability in accordance with the terms hereof are herein referred to individually as a "Member" and collectively as the "Members" or the "Obligated Group"); and

**WHEREAS**, the Thomas Health System, Inc. (the "Health System") is the sole member of Thomas and CHI; and

**WHEREAS**, the Health System, Thomas and CHI are authorized by law, and deem it necessary and desirable that Thomas and CHI and, when the Health System becomes a member of the Obligated Group, the Health System be able, to issue Obligations, as hereinafter defined, of several series in connection with its lawful and proper corporate purposes; and

**WHEREAS**, TMHF was organized for the purpose of supporting Thomas and deems it necessary and desirable that it be able to be jointly and severally liable for Obligations issued by or on behalf of Thomas hereunder;

**WHEREAS**, all acts and things necessary to make this Master Indenture the valid, binding and legal obligation of the Corporation and other Members of the Obligated Group according to its terms have been done and performed; the execution of this Master Indenture has in all respects been duly authorized; the Corporation and the other Members of the Obligated Group and TMHF as a Special Member of the Obligated Group, in the exercise of the legal right and power vested respectfully vested in them, execute this Master Indenture; and the Corporation and other Members of the Obligated Group may make, execute, issue and deliver one or more Obligations of various series; and

**WHEREAS**, the Master Trustee agrees to accept and administer the trusts created hereby.

## GRANTING CLAUSE

**NOW, THEREFORE**, in consideration of the premises and of the acceptance by the Master Trustee of the trusts hereby created and of the giving of consideration for and the acceptance of the Obligations created hereunder, and of other good and lawful consideration, the

{C1356879.7}

receipt and sufficiency of which are hereby acknowledged, and to secure the payment of the principal of, premium, if any, and interest on the Obligations issued, authenticated and delivered by Members of the Obligated Group, and the performance and observance of all of the covenants and conditions herein or therein contained, the Corporation and CHI have executed and delivered this Master Indenture and covenant and agree with the Master Trustee for the equal and proportionate benefit of the holders from time to time of Obligations issued hereunder, as follows:

As security for its obligation to make payments on the Obligations issued hereunder, the Obligated Group hereby GRANTS, CONVEYS, SETS OVER AND PLEDGES to the Master Trustee a security interest in all Gross Receipts of the Obligated Group (the "Gross Receipts Pledge") for the benefit of the Holders of such Obligations; provided, that the Gross Receipts Pledge shall be subject and subordinate to Permitted Encumbrances as provided herein; and provided, further, that the existence of such security interest shall not prevent the expenditure, deposit or commingling of Gross Receipts and other collateral pledged by the Obligated Group so long as all required payments in connection with such Notes and other Obligations are made when due. Without limiting the generality of the foregoing, this security interest shall apply to all Gross Receipts, whether now existing or hereafter coming into existence and whether now owned or held or hereafter acquired by the Obligated Group. If any payment required in connection with the Obligations is not made when due, any Gross Receipts subject to this security interest which are then on hand and any such Gross Receipts thereafter received shall not be commingled or deposited, but shall immediately, or upon receipt, be transferred to the Master Trustee for deposit in the Gross Receipts Account described below.

As security for the obligation of Thomas to make payments on Obligations issued by or on its behalf hereunder, TMHF, as a Special Member of the Obligated Group, hereby GRANTS, CONVEYS, SETS OVER AND PLEDGES to the Master Trustee a security interest in all Gross Receipts of TMHF (the "Special Gross Receipts Pledge") for the benefit of the Holders of such Obligations issued by or on behalf of Thomas; provided, that the Gross Receipts Pledge shall be subject and subordinate to Permitted Encumbrances as provided herein; and provided, further, that the existence of such security interest shall not prevent the expenditure, deposit or commingling of Special Gross Receipts by TMHF so long as all required payments in connection with such Notes and other Obligations issued by or on behalf of Thomas are made when due. Without limiting the generality of the foregoing, this security interest shall apply to all Special Gross Receipts, whether now existing or hereafter coming into existence and whether now owned or held or hereafter acquired by TMHF. If any payment required in connection with the Obligations issued by or on behalf of Thomas is not made when due, any Special Gross Receipts subject to this security interest which are then on hand and any such Special Gross Receipts thereafter received shall not be commingled or deposited, but shall immediately, or upon receipt, be transferred to the Master Trustee for deposit in the TMHF Subaccount in the Gross Receipts Account described below. Within the parameters set forth in this paragraph, references to Gross Receipts in this Master Indenture shall include the Special Gross Receipts and Members of the Obligated Group shall include TMHF; provided, that the Special Gross Receipts are pledged only to and may be used only for Obligations issued by or on behalf of Thomas and TMHF shall be jointly and severally liable only for the Obligations issued by or on behalf of Thomas. Except as provided in Section 404, in no event may the Gross Receipts or any other assets of TMHF be pledged to or used for any Obligation or other Indebtedness of any

2

{C1356879.7}

Member of the Obligated Group other than Thomas or may TMHF be considered liable on the Obligation or other Indebtedness of any Member of the Obligated Group other than Thomas.

The Master Trustee is hereby authorized and directed to establish a Gross Receipts Account, into which there shall be deposited upon the occurrence of an Event of Default under this Master Indenture any and all Gross Receipts of the Obligated Group. The Master Trustee shall establish the TMHF Subaccount therein for the Special Gross Receipts as described above. Upon the occurrence of an Event of Default, the Master Trustee shall take all action necessary to insure that all such Gross Receipts are deposited into the Gross Receipts Account, including, but not limited to, depositing directly all payments received and directing all debtors and payors of the Obligated Group to make all payments due to the Obligated Group Members to the Gross Receipts Account. The Gross Receipts Account and all amounts contained therein shall be subject to the lien of this Master Indenture in favor of the Holders of Obligations. Amounts on deposit in the Gross Receipts Account shall be transferred to payment of debt service on Obligations due and past due and shall otherwise be applied by the Obligated Group for its purposes until the Master Trustee gives written notice to the Obligated Group of the exercise of remedies under this Master Indenture as a secured party and enforces its right and interest to such Account and the amounts on deposit therein. The Master Trustee is hereby authorized to take such self-help and other measures that a secured party is entitled to take under the Uniform Commercial Code. Upon a cure or waiver of the Event of Default that caused the funding of such Account, the Master Trustee shall transfer the amounts on deposit in the Gross Receipts Account to the Obligated Group Agent.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION

*Section 101. Definitions.* In addition to the words and terms elsewhere defined in this Master Indenture, the following words and terms as used in this Master Indenture shall have the following meanings unless the context or use indicates another or different meaning or intent:

"*Accelerable Instrument*" means any Obligation or any mortgage, indenture, loan agreement or other instrument under which there has been issued or incurred, or by which there is secured, any Indebtedness evidenced by an Obligation, which Obligation or instrument provides that, upon the occurrence of an event of default under such Obligation or instrument, the holder thereof may request that the Master Trustee declare such Obligation or Indebtedness due and payable prior to the date on which it would otherwise become due and payable.

"*Account Receivable*" or "*Account*" has the meaning given it in the West Virginia Uniform Commercial Code and, except as used in "account for," means a right to payment of a monetary obligation, whether or not earned by performance: (i) For property that has been or is to be sold, leased, licensed, assigned or otherwise disposed of; (ii) for services rendered or to be rendered; (iii) for a policy of insurance issued or to be issued; (iv) for a secondary obligation incurred or to be incurred; (v) for energy provided or to be provided; (vi) for the use or hire of a vessel under a charter or other contract; (vii) arising out of the use of a credit or charge card or information contained on or for use with the card; or (viii) as winnings in a lottery or other game of chance operated or sponsored by a state, governmental unit of a state or person licensed or authorized to

3